WILLIAM C. JORDAN *vs.* HARRY C. MCNALLY, Trustee.

Cumberland.    Opinion December 23, 1924.

*In an action of assumpsit to recover a broker's commission on the sale of real estate, a valid and definite agreement between the owner and the would-be purchaser for the purchase of the property is a condition precedent.*

In the instant case no such agreement was made between the sellers and the purchaser.    The most that could be claimed was an oral agreement to make a subsequent agreement if the terms could be agreed upon in the future, which is no agreement whatever.

On motion by defendant.    An action of assumpsit to recover a broker's commission on the sale of real estate.    A verdict for $5,250 was rendered for plaintiff and defendant filed a general motion. Motion sustained.

The case is fully stated in the opinion.

*Harry L. Cram and Ralph M. Ingalls,* for plaintiff.

*Thomas L. Talbot,* for defendant.

SITTING: CORNISH, C. J., PHILBROOK, DUNN, MORRILL, WILSON, DEASY, JJ.

CORNISH, C. J.    This is an action of assumpsit to recover a broker's commission on the sale of certain real estate known as Saddleback farm in East Baldwin.    The plaintiff recovered a verdict of $5,250 and the case is before the Law Court on defendant's general motion.

The determining facts are as follows:    Henrietta Pierce Watkinson, a resident of San Francisco, California, died testate in August, 1920, leaving as a part of her estate the land above mentioned.    Under the terms of the will and codicil Frank J. Hurley and Lucy Ward Stebbins, both residents of San Francisco, were duly appointed executors with the general power to convey real estate, and this particular real estate was devised to Harry C. McNally, the defendant, and Lucy Ward Stebbins as trustees with the power to cause the pine timber to be cut therefrom and the proceeds devoted to certain specified purposes.    Ancillary administration was taken out in Cumberland County, Maine, and the trustees were duly qualified here on December 6, 1920.

The plaintiff desired to handle the property as a broker and had several interviews with the defendant.    On December 7, 1921, the plaintiff's attorney, Mr. Cram, prepared the draft of a so-called option of purchase by Blanchard Sons Company of Wilton, Maine.    The plaintiff first took this document to Mr. McNally to sign but he declined to do so.    Then at his suggestion it was sent to the executors in California to be signed by them and assented to by the trustees. This so-called option, after reciting the preliminaries and describing the property read as follows:

"In consideration of one dollar and other valuable consideration to them paid, the executors of said Henrietta Pierce Watkinson estate hereby grant to said Blanchard Sons Company an option for the purchase of said land and timber and wood as aforesaid, at such price as may be mutually agreed upon, upon condition that a preliminary examination of said land and timber and wood shall be made by said Blanchard Sons Company on or before January 1st, 1922, said executors on their part agreeing to name their lowest price for said land, timber and wood on or before said January 1st, 1922, and provided further, that if after said preliminary examination, and the

receipt from said executors of the lowest price for said land, timber and wood as aforesaid, said Blanchard Sons Company shall desire to make a further detailed examination and survey of said land and timber and wood that this option shall be extended to February 1st, 1922, to enable said Blanchard Sons Company to make such further detailed examination and survey, and on the further condition, that if after said preliminary examination and the receipt from said executors of the lowest price for said land, timber and wood as aforesaid said Blanchard Sons Company decide not to make said further detailed examination and survey and not to purchase said land and timber and wood, that they shall at once notify said executors of said estate; and on the further consideration that decision as to the purchase of said land and timber and wood shall be given by said Blanchard Sons Company on or before said February 1st, 1922."

This document was sent to executor Hurley on December 10, 1921, by Mr. McNally, and under date of December 16, 1921, Mr. Harrison, the attorney for the executors, answered Mr. McNally as follows: "The Executors prefer not to give an option in the form submitted by Mr. Cram; and would much prefer not to tie themselves up with an option at all. They recognize, however, that a prospective purchaser can hardly be expected to invest substantial time and expense in an investigation or survey of the property submitted for sale, unless reasonably protected in so doing. They have placed upon the property a price of $160,000 and see no occasion yet for any reduction of this as their lowest price. If the property at this price interests any prospective purchaser, the executors would be willing to give an option to such purchaser at that figure for thirty days in consideration of his prosecution of the necessary examination and investigation to enable him to reach an intelligent conclusion concerning the same.

"In view of the variance between us with reference to the form of option, it does not seem worth while to have one executed by the executors and forwarded with this. If however an option in the form indicated would be satisfactory to Messrs. Blanchard Sons Co. and you will so inform me I will have such a one signed and acknowledged and sent forward without delay." The paper was returned unsigned.

Under the same date Mr. Hurley wrote to Mr. McNally stating that he had received a letter from Fox Brothers of Fryeburg in

regard to purchase of this property and further saying: "As to giving an option to anyone, that is not the policy of this Company nor the policy of the executors of the estate, notwithstanding that we realize it requires time to examine the property. We are willing to give them a verbal agreement to the effect that we will wait thirty days until they are able to make an examination of the property before we will negotiate with any other parties, that is if this arrangement is satisfactory to you. The price we are asking for the property is $160,000 and if Fox Brothers are willing to pay this amount for it, we will be glad to sell to them. In the event they are not willing to pay this amount, it is up to them to make us an offer. Under the circumstances you can see that it would be very foolish to give an option to any one other than a verbal agreement allowing them to examine the property, and holding it up, until the examination is made, for thirty days.

"It seems to me it would be advisable for you to communicate with Fox Brothers immediately and find out whether they are willing to pay us $160,000 for the property. In the event they are not then you can proceed along the lines as may be suggested by Mr. Harrison in his letter to you."

Here correspondence closed, and that already quoted shows beyond a doubt that up to this time not only was no option of purchase given, but the giving of one was definitely refused. All that the executors were willing to do was to agree verbally to allow a prospective purchaser thirty days for exploration, in case the Fox Brothers did not pay $160,000, the price already set.

A careful study of the evidence settles to this, that all that the plaintiff proved in the nature of an alleged option from the estate to Blanchard Sons Company was an oral statement by McNally in January, 1922, that the price was $160,000 and that Blanchard could have thirty days in which to cruise the lot and decide whether he would take it at that figure or not. Mr. Blanchard did not then agree to take it at $160,000 or at any price. In fact none was ever agreed upon. The whole matter was left in the air. That was the only interview between McNally and Blanchard. Blanchard says he told McNally that if the lot contained the amount of timber estimated by the estate he would give $160,000 for it, and if it contained less he would take it at the market price of the various kinds of timber estimated on further exploration. McNally denies that

he ever agreed to sell to Blanchard at any other figure than $160,000 and that he ever agreed to a price based on Blanchard's estimate and an undetermined market stumpage price and his claim is reasonable. But even taking Blanchard's version as true it negatives a meeting of minds. Blanchard was willing to pay $160,000 for the property in case on his exploration the timber should be estimated to be there, and McNally was only willing and then only authorized to sell for the full $160,000. Blanchard apparently did not think he had any option of any kind because he made no exploration thereafter and the matter dropped so far as he was concerned.

Several interviews between the plaintiff and the defendant followed during the Winter and Spring of 1922, but nothing came of them and finally in the Summer of 1922 the property was sold to other parties for $105,000 with which sale the plaintiff had nothing to do. This suit for commission followed.

The evidence fits the specification of the plaintiff's vague and indefinite claim filed in the case, viz.: "That thereafterwards said plaintiff, said William C. Jordan did procure and produce a customer for said property and by his own effort and at his own great expense and labor and solely and only by means thereof, did arrange and consummate an agreement, whereby said Harry C. McNally as Trustee as aforesaid, did meet, negotiate, talk, agree and barter and sell said real estate and said timber to said customer for a great sum of money and did then and there agree to sell said tract of timber land for a sum certain or thereafter to be made certain, according to the estimated stumpage thereof, based upon the market price which should be then made to appear at the time of said estimate and final delivery of deeds, documents and papers legally conveying the same to said purchaser."

This alleged agreement is simply a promise to make an agreement in the future if the terms could be agreed upon, which so far as this case is concerned is no agreement whatever. It lacks teeth. Waiving the question whether McNally as a single trustee under the will had legal authority to make a contract of sale binding upon the estate, the evidence in this case fails to show that any such contract of sale was in fact made, and that the plaintiff fulfilled conditions necessary to entitle him to a broker's commission.

Those conditions are that the broker shall procure for the owner a customer willing, ready and able to purchase and pay for the property

the stipulated price on the terms defined by the owner.  *Smith* v. *Lawrence*, 98 Maine, 92; *Grant* v. *Dalton*, 120 Maine, 350; *Jutras* v. *Boisvert*, 121 Maine, 32; *Mears* v. *Biddle*, 122 Maine, 392.  The plaintiff fell far short of doing this and therefore is entitled to no commission.  The customer produced by the broker and the principal must come to a final agreement on the terms of the transaction. *Damers* v. *Fisheries Co.*, 119 Maine, 343.

*Motion sustained.*