CHARLES L. JONES
*vs.*
WILLIAM S. SILSBY

Kennebec.    Opinion, August 26, 1948.

*Harvey D. Eaton,*
*A. Raymond Rogers,* for plaintiff.

*Blaisdell and Blaisdell,* for defendant.

SITTING: STURGIS, C. J., THAXTER, MURCHIE, TOMPKINS, FELLOWS, MERRILL, JJ.

FELLOWS, J. This is an action of assumpsit, on an account annexed to the writ, seeking to recover a commission for sale of real estate. It was heard by the presiding justice by agreement with right of exceptions reserved. The court found for the defendant. The case is now before the Law Court on exceptions by the plaintiff. The exceptions are overruled.

The suit was brought in the Superior Court for Kennebec County by Charles L. Jones, a licensed real estate broker, against two defendants, Dr. Archibald Ross and William S. Silsby. During the proceedings the plaintiff discontinued his action as to Dr. Ross, leaving William S. Silsby as the only defendant.

It appears that the late Fannie B. Haslam of China, Maine, died testate February 20, 1943 possessed of certain real and personal estate. Dr. Archibald C. Ross was appointed administrator of her estate with the will annexed, and, while acting as such administrator, on August 4, 1943 entered into an agreement with the plaintiff broker Jones, for the broker to sell for him as administrator certain real property belonging to the Haslam estate. On August 4, 1943 the plaintiff broker arranged for a sale of the property to Albert and Annie Allen for $2,700, and the plaintiff broker received from the Allens a down payment of $100.

This price of $2,700 was later changed on August 13, 1943 to $2,200, to which the $100 was to be applied.

The Allens made application to the Waterville Savings Bank for a loan to make up this purchase price, but Harvey D. Eaton, Esquire, then apparently the attorney for the bank, advised that Dr. Ross as administrator could give no valid title to the land because the personal assets of the estate were sufficient to pay all expenses. The Allens, however, took possession of the property and continued to occupy it.

The will of Fannie B. Haslam provided for a trust, and Mr. Eaton, as attorney for the bank, wrote Mrs. Goldie B. Higgins, daughter of Mrs. Haslam and beneficiary, about the contemplated sale which the bank considered to be for a fair figure. Mrs. Higgins agreed, and petitioned for the appointment of her attorney, (this defendant William S. Silsby) and on November 22, 1943 Silsby was appointed trustee. Mr. Eaton, acting for the bank in its arrangements to perfect the title and secure its loan to the Allens as prospective purchasers, wrote letters of advice and explanation to the plaintiff broker, to the Allens, to Dr. Ross, and to the defendant Silsby. It does not appear that the defendant Silsby ever had any arrangements or any conversation with the plaintiff or with any attorney acting for the plaintiff. Mr. Eaton was the attorney for the bank (or the estate) during all negotiations, and first acted as attorney for this plaintiff when he commenced this action. All the negotiations of the Allens, as purchasers, prior to receiving their deed, were with Dr. Ross the administrator, with the bank or bank's attorney, and with Jones the plaintiff broker. In fact, the plaintiff broker sent his bill on April 8, 1944 for $100 as balance of commission to Dr. A. C. Ross, administrator. Dr. Ross told the plaintiff broker to "send bill to William Silsby" which the broker did.

After the appointment of the defendant Silsby as trustee, Mr. Eaton in order to get the matter concluded, wrote

on June 15, 1944 to the defendant Silsby that "I think he (Jones) negotiated a very good sale" and "it would be to the advantage of the estate in your hands to make sure that the sale goes through as soon as possible." In answer to this letter from Mr. Eaton, the defendant Silsby wrote Mr. Eaton on June 19, 1944 "I have every intention to complete the sale of the Haslam real estate according to Mr. Jones negotiated tentative sale." and "will attend to matters as promptly as I can and trust all parties will be patient until I can get the transfer in proper order."

In answer to an inquiry by the Allens, who were occupying the house and anxious for a deed, the defendant Silsby on March 16, 1945 wrote them "I have no definite information in matter of your negotiations with Dr. Ross regarding the Fannie Haslam property although I assume Dr. Ross has acted in good faith. At this time I am not legally authorized to confirm or ratify any of Dr. Ross's acts. When I have acquired the proper authority from the Probate Court, Kennebec County, in the matter of sale of the property I will get in touch with you."

On April 23, 1945 the Probate Court granted to the trustee a license to sell, and on May 5, 1945 he wrote to the Allens "Some negotiations were made with you by the administrator to pay the sum of $2,200. Therefore, if you still desire to purchase the premises and care to pay $2,200 and assume the back taxes which I understand have not been paid, please advise." On June 25, 1945 the defendant Silsby executed a trustee's deed to C. A. Allen for an expressed consideration of $2,200.

Later, on September 30, 1946, in answer to an inquiry from Attorney Eaton, the defendant Silsby wrote Eaton "I do not understand that any contract was ever made between Mr. Jones and me to sell the property." As a result of this letter from Silsby, Mr. Eaton, acting then as attorney for the plaintiff, broker Jones, brought this action of assumpsit against both Dr. Ross and Silsby in Kennebec Superior

Court for balance of commission. The action was discontinued against Dr. Ross on the plaintiff's motion, and the case against Silsby heard by the court with jury waived and exceptions reserved.

The justice presiding in Superior Court, after hearing the evidence, found that, while Dr. Ross might be liable, there was no contractual or other personal liability on the part of the defendant Silsby, and ordered judgment for defendant. Exceptions were taken by the plaintiff to the court's ruling, and to the finding that the plaintiff failed to establish liability on the part of defendant Silsby.

A person acting for an estate in a representative capacity, such as executor, administrator, or trustee, may be liable personally on any contract made by him unless the law (or a will) permits the credit of the estate to be pledged. This is true even though the contract is in the interest and for the benefit of the estate. *Call* v. *Garland,* 124 Me. 27; 125 A. 225. An executor or other representative cannot create a debt against the deceased. *Davis* v. *French,* 20 Me. 21, 23; 37 Am. Dec. 36; *Baker* v. *Fuller,* 69 Me. 152. Even fees for necessary services of an attorney in settling an estate are claims against the representative personally, although "reasonable fees for necessary and beneficial legal services" are "frequently allowed by judges of probate." *Baker* v. *Moor,* 63 Me. 443, 446; R. S. 1944, Chap. 140, Sec. 44.

It is fundamental law that for a broker to recover compensation, there must be a valid and definite contract, and the right to compensation depends on that contract. The contract may be implied from facts and circumstances, but it must appear that the plaintiff rendered services in behalf of the defendant, with the knowledge and consent of the defendant, or there must be "ratification of a suggested contract." *Morrill* v. *Farr,* 130 Me. 384; 156 A. 383; *Jordan* v. *McNally,* 124 Me. 216; 126 A. 876.

The written contract here between the plaintiff broker and Dr. Ross, the administrator, made on August 4, 1943,

would also have to be performed within one year, where no time was specified. R. S. 1944, Chap. 106, Sec. 12; *Sawyer v. Land Bank*, 135 Me. 137; 190 A. 731.

In this case there was no written contract between the defendant Silsby and the plaintiff broker Jones. There was a contract between Jones and Dr. Ross, and the broker Jones procured for Dr. Ross, the administrator, a customer for the real estate in accordance with the contract. The bank's attorney discovered that Dr. Ross, as administrator, could not give a valid deed. A trustee however could give a deed if licensed by the Probate Court. The defendant Silsby was appointed trustee and secured the necessary license. The defendant Silsby, as trustee, sold on June 25, 1945 to the purchaser Allen, with modifications of the terms made by Ross.

The plaintiff contends that there was an implied promise on the part of the defendant Silsby to personally pay the commission agreed upon by Ross, because he "adopted" or "ratified" the original Ross-Jones contract. The court found otherwise, and the record certainly authorizes such finding.

Dr. Ross, as administrator, had no right or authority to sell the real estate, but he made the contract with the plaintiff broker to secure for him a customer. The defendant Silsby was at no time a party to this contract, had no conversation or arrangements with the plaintiff, and it does not appear that he ever had full knowledge of the contract. The defendant Silsby did receive a bill from the plaintiff broker, and he did later sell the property on new terms agreed upon between Silsby and the purchaser Allen. The sending of the bill and the acknowledgment of its receipt, are the only direct connections between the plaintiff broker and the defendant Silsby shown by the record. True, the terms of final sale were somewhat the same as originally offered by the administrator Ross, but, as the presiding justice correctly found, there is no evidence to connect the defendant Silsby and the plaintiff, broker Jones, in a manner to make the defendant Silsby personally liable.

Further than this, the defendant Silsby pleaded specially the statute of limitations, and under almost any view of the facts regarding "adoption" or "ratification" of the contract made on August 4, 1943 between Jones and Ross, this contract might well be considered legally barred as to this defendant as trustee. This defendant trustee received no license to sell until April 23, 1945. See R. S. 1944, Chap. 106, Sec. 12. The justice presiding, properly found that the plaintiff Jones produced to Dr. Ross, the administrator who employed him, a purchaser, but the plaintiff broker performed no further or later acts or services for Ross, or for Silsby.

The record discloses no error in the decision of the Superior Court.

*Exceptions overruled.*